UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION
_____

MARK A. ABRAITIS,

       Plaintiff,

v.

NATHAN MOON et al.,

       Defendants.
_____/

Case No. 2:19-cv-186

Honorable Janet T. Neff

## OPINION

This is a civil rights action brought by a state prisoner under 42 U.S.C. § 1983. Under the Prison Litigation Reform Act, Pub. L. No. 104-134, 110 Stat. 1321 (1996) (PLRA), the Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief. 28 U.S.C. §§ 1915(e)(2), 1915A; 42 U.S.C. § 1997e(c). The Court must read Plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible. *Denton v. Hernandez*, 504 U.S. 25, 33 (1992). Applying these standards, the Court will dismiss Plaintiff's complaint for failure to state a claim.

### Discussion

**I.    Factual allegations**

Plaintiff is presently incarcerated with the Michigan Department of Corrections (MDOC) at the Chippewa Correctional Facility (URF) in Kincheloe, Chippewa County, Michigan.

The events about which he complains occurred at that facility. Plaintiff sues URF Corrections Officer Nathan Moon and URF Prisoner Counselor Christopher Batho.

Plaintiff alleges that on January 27, 2019, he heard Defendant Moon speaking with prisoner Montelongo regarding how officers issue sanctions for misconducts. Plaintiff believed Defendant Moon misinformed Montelongo, so Plaintiff spoke with Montelongo and corrected the misinformation. Defendant Moon was nearby and overheard the conversation between Plaintiff and Montelongo.

Later, when Plaintiff returned to the lobby/base area of the unit, Defendant Moon told Plaintiff his conversation with Montelongo had earned Plaintiff an excessive noise ticket. Plaintiff took offense at the misconduct and Moon's other threats regarding the punishment that would follow. Plaintiff threatened to file a grievance. Plaintiff contends his conversation with Montelongo was not excessively noisy. Plaintiff filed a grievance against Defendant Moon. It was denied.

Officer Beacom conducted the review of the excessive noise misconduct with Plaintiff. Plaintiff pleaded guilty in exchange for a sanction of two-days toplock. Plaintiff contends he is innocent despite his plea.

Plaintiff's first day of toplock sanctions occurred on February 1, 2019. Despite being on toplock, Plaintiff received a call out for his religious service. He did not receive a call out for his work assignment. While returning from the religious service, Plaintiff learned that the library where he worked had twice called the unit to callout Plaintiff for work. Plaintiff posits that Defendant Moon and one of his friends took those calls and then refused to callout Plaintiff for work. Plaintiff filed a grievance against Defendant Moon. It was denied.

In the weeks that followed, Defendant Moon mocked Plaintiff's religion by calling Allah a liar and saying "fuck Allah." Plaintiff mentions, without describing, other incidents of ridicule and harassment. Plaintiff filed grievances against Defendant Moon. They were denied.

On March 17, 2019, Plaintiff was standing near the hot water dispenser. Defendant Moon was leaving the staff bathroom drying his hands with a paper towel. Defendant Moon "forcefully threw the paper towel towards Plaintiff . . . ." (Compl., ECF No. 1, PageID.8.) The paper towel hit the prisoner bathroom door, which was only 18 to 24 inches away from Plaintiff. Plaintiff jumped. He was alarmed and panicked by the incident. Plaintiff filed a grievance against Defendant Moon.

On April 2, 2019, Defendant Batho called Plaintiff to his office for an interview, presumably regarding the paper towel incident. After a brief exchange, Plaintiff left. Defendant Batho then called Plaintiff back to his office and this exchange followed:

> Batho: You gotta be fucking kidding me if you think for one second I am going to believe this bullshit you put in this grievance. You are a fucking liar and if you think for one second me or any staff here would believe this bullshit you are a fucking idiot.
>
> Plaintiff: I stand firmly behind what I wrote in that grievance.
>
> Batho: I tell you what I am going to look at the camera and I swear to God if you are lying I am going to bury your ass in the boat. You will never write another grievance at this facility I will ensure that you are put on permanent restriction and not one of your grievances will get out of this facility as long as I have a say or my friends or family are here.
>
> Plaintiff: Batho I am not going to sit her and take this, you threatening me and screaming at me. I already told you I got nothing to add so I am done!
>
> Batho: No, you are not done and you are not leaving! I am giving you a direct order to stay we are not finished! If you leave I will throw your ass in the boat so fucking fast for disobeying a direct order that by the time you are done nobody will ever remember your ass! You dumb fuck you sit here and don't listen and think you are going to

|  | do as you please. You realize I got people here, family, friends and WE will see to it your life here is living a hell. I don't care if they send you over to KCF or you stay here I will make sure the next staff make your life a living hell. |
|---|---|
| Plaintiff: | I told you I am done you are not going to talk to me in this tone nor will I take this abuse from you |
| Batho: | I am giving a direct order we are not done! |
| Plaintiff: | Well I am allowed to disobey a direct order when you threaten to inflict direct harm upon me or I am in fear! Goodbye! |

(Compl., ECF No. 1, PageID.9-11.) Plaintiff filed a grievance against Defendant Batho. It was denied.

Plaintiff contends that Defendants have retaliated against him for his participation in conduct protected by the First Amendment. Plaintiff seeks a declaration that Defendants have violated his constitutional rights, a preliminary and permanent injunction barring further retaliation, and compensatory and punitive damages.

## II. Failure to state a claim

A complaint may be dismissed for failure to state a claim if it fails "'to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions. *Twombly*, 550 U.S. at 555; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). The court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at

679. Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 556). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—that the pleader is entitled to relief." *Iqbal*, 556 U.S. at 679 (quoting Fed. R. Civ. P. 8(a)(2)); *see also Hill v. Lappin*, 630 F.3d 468, 470-71 (6th Cir. 2010) (holding that the *Twombly/Iqbal* plausibility standard applies to dismissals of prisoner cases on initial review under 28 U.S.C. §§ 1915A(b)(1) and 1915(e)(2)(B)(i)).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996). Because § 1983 is a method for vindicating federal rights, not a source of substantive rights itself, the first step in an action under § 1983 is to identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271 (1994). Plaintiff's allegations implicate the First Amendment.

### III. First Amendment retaliation

Retaliation based upon a prisoner's exercise of his or her constitutional rights violates the Constitution. *See Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999) (en banc). In order to set forth a First Amendment retaliation claim, a plaintiff must establish that: (1) he was engaged in protected conduct; (2) an adverse action was taken against him that would deter a person of ordinary firmness from engaging in that conduct; and (3) the adverse action was motivated, at least in part, by the protected conduct. *Id.* Moreover, a plaintiff must be able to prove that the exercise of the protected right was a substantial or motivating factor in the

5

defendant's alleged retaliatory conduct. *See Smith v. Campbell*, 250 F.3d 1032, 1037 (6th Cir. 2001) (citing *Mount Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977)).

Considering Plaintiff's allegations in chronological order, first, he contends that Defendant Moon retaliated against Plaintiff for speaking with another prisoner regarding that prisoner's misconduct by writing an excessive noise misconduct against Plaintiff. Plaintiff's conduct in helping another prisoner to defend against a misconduct report is not protected conduct. A prisoner does not have an independent right to help others with their legal claims and grievances, unless the inmate the receiving the assistance would otherwise be unable to seek redress. *Herron v. Harrison*, 230 F.3d 410, 415-16 (6th Cir. 2000) (citing *Thaddeus-X*, 175 F.3d at 395) (holding that while a prisoner does not have an independent right to help others with their legal claims and grievances, such conduct is protected when the inmate receiving the assistance would otherwise be unable to seek redress). Plaintiff does not claim that prisoner Montelongo was otherwise unable to seek redress. Accordingly, actions taken by Defendant Moon in response to Plaintiff's assistance to Montelongo do not violate Plaintiff's First Amendment rights.

Plaintiff next complains that Defendant Moon failed to call him out for Plaintiff's job assignment while Plaintiff was on toplock. Plaintiff's claim that Defendant Moon received the phone call asking that Plaintiff report to work is nothing more than speculation. Nonetheless, even accepting that speculation as fact, Plaintiff would not be entitled to relief.

Plaintiff's "toplock" status limits his activities, including his ability to report to work assignments. MDOC Policy Directive, 03.03.105 (Eff. 7/1/2018) ("A prisoner on toplock is restricted to his/her own cell, room, or bunk and bunk area.") A prisoner may participate in certain activities (showers, visits, medical care, school and law library), but may only participate in work assignments with the authorization of the warden or designee. *Id*. Plaintiff acknowledges that he

6

was on toplock.  He does not allege that the warden or designee had authorized his participation in work assignments.  Whatever Defendant Moon may have said regarding Plaintiff's work that day, he was not the decisionmaker.  A defendant's statements or conduct are not evidence of retaliation if the defendant is not the decisionmaker taking the alleged adverse action.  *Smith,* 250 F.3d at 1038; *Shehee v. Luttrell*, 199 F.3d 295, 301 (6th Cir. 1999).

Plaintiff next contends that Defendant Moon took adverse action against Plaintiff by way of verbal harassment regarding Plaintiff's religion and by throwing a paper towel near Plaintiff.  In *Thaddeus-X*, the Sixth Circuit recognized that some threats and deprivations are too minimal to constitute adverse action.  Citing *Bart v. Telford*, 677 F.2d 622 (7th Cir. 1982), the *Thaddeus-X* court held that minor harassment is insufficient to constitute adverse action, because recognition of such a standard would "'trivialize the First Amendment.'"  *Thaddeus* 175 F.3d at 398-99 (citing *Bart*, 677 F.2d at 625).  The Sixth Circuit has never said that verbal abuse is sufficient to demonstrate adverse action.  *Taylor v. City of Falmouth*, 187 F. App'x 596, 600 (6th Cir. 2006); *see also Carney v. Craven,* 40 F. App'x 48, 50 (6th Cir. 2002) ("Even if the grievance was not frivolous, he did not state a claim for retaliation in the form of verbal harassment.  An inmate has no right to be free from verbal abuse . . . and minor threats do not rise to the level of a constitutional violation."); *Hilton v. Mish*, 224 F. Supp. 3d 595, 603 (W.D. Mich. 2016) ("[V]erbal abuse, foul language, and insensitive comments made to or about a plaintiff generally do not constitute adverse action.").  The Court concludes, therefore, that the verbal harassment alleged here would not deter a person of ordinary firmness from exercising that person's First Amendment rights.

A specific threat of harm may satisfy the adverse-action requirement if it would deter a person of ordinary firmness from exercising his or her First Amendment rights, *see, e.g.,*

7

*Thaddeus-X*, 175 F.3d at 396, 398 (threat of physical harm); *Smith v. Yarrow*, 78 F. App'x 529, 542 (6th Cir. 2003) (threat to change drug test results). However, "'prisoners are expected to endure more than the average citizen,' and so not every objectionable act directed at a prisoner constitutes adverse action sufficient to deter . . . ." *Reynolds-Bey v. Harris*, 428 F. App'x 493, 503 (6th Cir. 2011) (quoting *Siggers-El v. Barlow*, 412 F.3d 693, 701 (6th Cir. 2005)). Certain threats or deprivations are so *de minimis* that they do not rise to the level of being constitutional violations. *Thaddeus-X*, 175 F.3d at 398; *Smith*, 78 F. App'x at 542. Plaintiff's allegations regarding the paper towel incident fall squarely within the *de minimis* category.

Because Plaintiff either fails to allege protected conduct or fails to allege adverse action by Defendant Moon, Plaintiff has failed to state a retaliation claim against Defendant Moon.

Plaintiff's claim against Defendant Batho fares no better. Plaintiff suggests that Defendant Batho threatened with various types of harm because Plaintiff filed a grievance. Careful reading of the word-for-word exchange between Plaintiff and Batho reveals otherwise. All of Batho's "threats" were a consequence not of filing a grievance, but of filing a false grievance. Batho threatened that negative consequences would befall Plaintiff if Plaintiff was lying. However, the right to file grievances is protected only insofar as the grievances are not "frivolous." *Herron*, 203 F.3d at 415. "Abusive or manipulative use of a grievance system would not be protected conduct," *King v. Zamiara*, 680 F.3d 686, 699 (6th Cir. 2012), and an "inmate cannot immunize himself from adverse administrative action by prison officials merely by filing a grievance or a lawsuit and then claiming that everything that happens to him is retaliatory," *Spies v. Voinovich*, 48 F. App'x 520, 525 (6th Cir. 2002). As the Supreme Court held in *Lewis v. Casey*, "[d]epriving someone of a frivolous claim . . . deprives him of nothing at all, except perhaps the punishment of Federal Rule of Civil Procedure 11 sanctions."). Accordingly, Plaintiff has failed

8

to allege that Defendant Batho threatened Plaintiff in retaliation for protected conduct; therefore, Plaintiff has failed to state a retaliation claim against Defendant Batho.

## Conclusion

Having conducted the review required by the Prison Litigation Reform Act, the Court determines that Plaintiff's complaint will be dismissed for failure to state a claim, under 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c).

The Court must next decide whether an appeal of this action would be in good faith within the meaning of 28 U.S.C. § 1915(a)(3). *See McGore v. Wrigglesworth*, 114 F.3d 601, 611 (6th Cir. 1997). For the same reasons that the Court dismisses the action, the Court discerns no good-faith basis for an appeal. Should Plaintiff appeal this decision, the Court will assess the $505.00 appellate filing fee pursuant to § 1915(b)(1), *see McGore*, 114 F.3d at 610-11, unless Plaintiff is barred from proceeding *in forma pauperis*, *e.g.*, by the "three-strikes" rule of § 1915(g). If he is barred, he will be required to pay the $505.00 appellate filing fee in one lump sum.

This is a dismissal as described by 28 U.S.C. § 1915(g).

A judgment consistent with this opinion will be entered.

Dated: November 12, 2019 /s/ Janet T. Neff
Janet T. Neff
United States District Judge